Mr. Barnum, would you proceed? Thank you, Your Honor. May it please the Court, In April 2002, the Board of Veterans' Appeals found that Mr. Mikitaroff was 60% disabled because of a periodic back condition. In other words, a back condition that fluctuated from day to day and week to week. That 60% rating remains in effect today and has never been reduced. But in 2010, for purposes of determining TDIU, which is part of the same claim for benefits, the Board relied on a medical opinion that essentially found that Mr. Mikitaroff wasn't disabled at all, even though he had already been adjudicated as being 60% disabled during that same period. Now, the VA has acknowledged that those facts are incongruous, but it argues that the VA is not precluded from relying on medical opinions that are inconsistent with the adjudicated facts. We disagree because this violates the rule of law set forth in Reano v. Brown. But in this case, the doctor's opinion, we're talking about Dr. Sherman's September 2002 opinion, was not based upon the facts determined in the Board decision. It was based upon an independent physical examination. That's correct, but the point is, Your Honor, that there had already been an adjudication based on all of the medical evidence to date that Mr. Mikitaroff was 60% disabled, and that rating has never been reduced. But nonetheless, the conclusion that was reached by the doctor was not a conclusion based upon incorrect facts, but was based upon an independent assessment of facts. Well, Your Honor, I... Did you not distinguish it from the Reano case? No, Your Honor, I would disagree. I would say that Dr. Sherman's opinion was based on constructively incorrect facts because he found, as a matter of fact, that Mr. Mikitaroff was not disabled. But the predicate adjudicated fact was that he wasn't. Wait a minute, but can't he be disabled? I mean, isn't it possible for a person's medical condition to change? Yes, Your Honor, it's possible for... And given that he did an independent medical examination after the prior examinations that were the basis of the Board's opinion, couldn't he have come to a conclusion that the degenerative condition was, in fact, not caused by service connection or just a normal aging process? Couldn't he have come to that conclusion at that point? Your Honor, there's no question that medical conditions can change, but there is a specific procedure in place at the VA if the VA wishes to change a veteran's rating based on an allegation or an assertion of changed medical conditions. And there's no dispute in this case that the VA did not follow that procedure. That's why his rating continues to this day and has never been reduced. But, yeah, they didn't change the rating. That's what I find different about this case from a case in which, for example, the doctor's determination was that he was only 10% disabled and that his rating was reduced. In this case, he stayed, as I think you've explained, at 60%. The Board had, if I understand correctly, and correct me if I get the procedures wrong here, but my understanding was the Board sent it back for a determination of TDIU and an examination. That examination was held, and the determination based on that examination was he's not sufficiently disabled not to be able to work. Now, if the doctor had simply stopped at that point, you really wouldn't have any quarrel except for maybe a factual dispute with the doctor's conclusion, would you? I think we still would have a quarrel because when the Board remanded for that determination, it was a determination as to whether that 60% rating, which he'd already been adjudicated, which can't be appealed by the government. The question was, does that 60% rating entitle him to TDIU, which is basically an increase in its rating based on unemployability. And that would turn on whether the result of the examination and the rating determination was a conclusion that he was incapable of working. If I understand your question correctly, if Dr. Sherman had accepted as a predicate fact the 60% disability, even if he had looked at him on that particular day, because don't forget, his disability was episodic. It's in the record, the Board acknowledged the fact that occasionally he appeared to have normal conditions, but over a period of time, he experienced this episodic disabling back condition, which was the basis for a 60% disability rating. When it went back, Dr. Sherman took one snapshot at one point in time and determined at this point in time, he doesn't appear to be disabled. And that fact is incongruous with what the Board had already found, which was that because of his periodic disability, he was 60% disabled. Now, if Dr. Sherman had acknowledged and accepted as a predicate fact, which he should have, the 60% disability, and said, even though I'm not seeing it today, I'm going to accept as a predicate fact that he's 60% disabled, and then had gone on to say, now I'm looking at his vocational skills, I'm looking at his educational background, I'm looking at his work history, in light of all of that, I find that he is able to work and maintain gainful employment. If that had been the fact, then yes, we probably wouldn't be here today. But that's not what happened. He found that he wasn't disabled, which was an important factor in his finding that Mr. Mkhitaryov was able to maintain employment. And the Board relied heavily on that, gave it significant credence, gave it significant weight in its opinion.  Here's what I'm struggling with, as you present the argument. It's true that the doctor did not start his report by saying, I'm bound by the 60% disabled adjudication. But nothing he did upset that adjudication. So if there had been a first sentence in his report which had said, I acknowledge that I am bound by the 60% adjudication, and nothing that follows should be interpreted as undermining that 60% determination. Notwithstanding that, the person in front of me, from all of my examination and study of his background, everything I've done during my examination that I was asked to do, indicates to me that this person is capable of working and isn't really in all that bad a shape. Let's suppose that that's the report you write. Isn't that, other than the missing sentence, isn't that exactly your case? Your Honor, I respectfully disagree. I think that would be placing form over substance. This isn't a question of putting some sort of sentence in the report. He would have had to base his report on an assumption, a legitimate assumption that he was 60% disabled, and all of the diagnostic criteria that go along with that. He couldn't have simply just said, I acknowledge that I'm bound by this finding, but I disagree with it, and here's my actual observation. He has to basically say, I'm bound by a rating of 60% disability. What that means is, these are the corresponding diagnostic criteria that go along with that. Even though I'm not seeing that, if I assume that he has these conditions sufficiently severe to warrant a 60% rating, which I'm bound to assume, now, let me look at his vocational, educational, because don't forget, this was a TDIU evaluation, so you have to look at his vocational, educational, work history, and so forth, and put that together and say, a person with this severe of a disability to warrant 60% with these educational and vocational skills and background and so forth, it's my opinion that blank. Then that would have been a competent opinion, but that's not what he did, and it's not also what you just posited in your hypothetical. I understand. But it sounds to me like what you're challenging is the doctor's opinion and the veracity of the doctor's opinion, not necessarily the facts on which it was predicated. Your Honor, I guess I, again, disagree. We're challenging the idea. See, RIANAL stands for the proposition, and the government agrees that RIANAL is a rule of law, and they agree that the rule of law in RIANAL was designed to prevent parties from essentially skirting around and binding adverse findings of the VA. The only question is whether RIANAL has a broader implication beyond its facts such that it's binding on the VA as well. And when you have a predicate fact, remember, from 2000 to 2007, which is the period in question here, it is an adjudicated, unappealable for the government fact that Mr. McKitteroff was 60% disabled. That's a predicate fact. All subsequent rating decisions on Mr. McKitteroff have to assume that predicate fact. According to our reading of RIANAL. And so when you have a piece of evidence that comes up to the board that's based on something contrary to that predicate fact, then we would submit that that is entitled to no weight. That's the holding of RIANAL. The 2001 medical report acknowledged that he was in fact disabled but still employable in a limited capacity. The 2001 year? Yes. That's correct. And that is the start of the period for which TDIU is denied. There's a medical report that says, which is not the one that you were focusing on, the 2002 one, but there's a 2000 medical report that says he's still employable in a limited capacity, and that's the period of time at which the TDIU is being denied. So what do we do about that? Your Honor, what you said is correct, but the point is that the board placed great significance. I forget the exact language, but placed great significance. The September 2002 VA examination report, Appendix A-163. The board places great probative value on the September 2002 VA examination. So I think that because of the misinterpretation... Okay, but even if that's true, there's a 2000 medical exam, which you're not challenging, which meets all the criteria that you're saying you wanted the 2002 one to meet, namely acknowledges the disability, but then still concludes he's employable, maybe the board erred in relying on the 2002 one. Maybe you're right, but the predicate rest of the factual record fully supports the denial of TDIU from 2000 to 2007. Your Honor, I respectfully disagree. Why did they revert? The board sent it back on remand in 2002, knowing full well that 2000 report. So clearly that 2000 report was not sufficient to base a ruling denying TDIU. It remanded for further development. No, but it must have been sufficient because TDIU was denied from 2000. So the board couldn't rely on the 2002 medical report to deny TDIU going back to 2000 because he had been receiving TDIU from 1994 to 2000. So in order to justify denial to 2000, it had to have been based on that medical report from 2000. Otherwise, they couldn't have denied it. Your Honor, I would submit that we don't know what the board would have done if it didn't rely on the 2002 report. What we do know is that the board did rely on the 2002 report and prominently featured it and prominently placed reliance on it, and we submit that that deprives our client of the appropriate evaluation of TDIU under the appropriate reading of Rihannul under the broad interpretation of Rihannul that we are submitting. We should let you save the rest of your time for another one, Mr. Barney. Mr. Contos, am I saying it right? Good morning, and may it please the Court. The Court should affirm because the Veterans Court did not err in concluding that Rihannul has no bearing on this case. Rihannul held that a medical opinion based on an inaccurate factual premise is not material evidence for purposes of reopening a claim on the basis of new material evidence. Mr. McIntyre seeks to take that rule and really shoehorn it into a different situation, his situation. Now, Mr. McIntyre is unable to identify a single case that has taken the rule of Rihannul and put it into the facts that are presented here. The rule of Rihannul has been cited literally hundreds of times by the Veterans Court. It has also been recognized by this Court in several cases, and not one of those cases that we are aware of supports the extension that Mr. McIntyre seeks of the rule of Rihannul in this case. Do any of them oppose it? No, not that we're aware of. So what's the point? We've got a new set of facts and we've got to figure out whether we should apply the rule of Rihannul to this new set of facts. Well, I think that's an important question in a sense. The Court is evaluating under its rule of law jurisdiction whether the Veterans Court in this case misinterpreted its own decision in Rihannul. And so I think that in terms of whether or not it should be extended, I think that's for the Veterans Court. The Veterans Court said, we don't think the rule should be extended here. It doesn't apply on these set of facts. We don't give deference on rules of law to the Veterans Court. That's absolutely right, and I'm not suggesting that the Court could not reach the rule of law. We didn't make a jurisdictional argument in this case. But the point is that the Veterans Court said Rihannul means something. This is what Rihannul means. It's limited to the facts as I just described, the inaccurate factual premise that does not allow reopening on the basis of new material evidence. That is a sound decision. That is not erroneous. And we don't think there's any support in the law, and certainly Mr. McIntyre hasn't summoned any, any decisions of this Court or any decisions of the Veterans Court that have extended the rule. Yes, sir. I'm sorry, I cut you off. No, I was finished with that thought. I think you began by saying that the rule of Rihannul is that a medical opinion cannot be based on an inaccurate factual premise. But in Rihannul, the only reason that the premise was deemed to be inaccurate was because of the prior adjudication, right? That's correct. I mean, it wasn't inaccurate other than the fact that the Veterans Administration had already made a contrary finding. Yeah. So why isn't Mr. Barney Ryden saying that, in effect, what you've got here is an adjudication that was binding on the examining physician in September of 2002 and which, because it had been adjudicated to 60% disability, that physician was required to take cognizance of and give credence to, not simply to say, well, okay, I'm not challenging the 60%, but let's start with the proposition that the man is 60% disabled. I think there are a couple of answers to that. First, there is no support, and none summoned by Mr. McIntyre, that a medical examiner must abandon his independent judgment in making a determination. And I think that would be a bad rule generally. We want medical examiners to exercise their professional medical judgment and make those calls and not be sort of prejudged or bound by some external force. That's number one. Number two, look at what was that issue here. The April 2002 board decision was a scheduler rating decision. Mr. McIntyre is 60% disabled based on the rating schedule. In that decision, the board found that it needed more information with respect to TDIU, a distinct inquiry. That is something that is different. This court has recognized that those are different issues, scheduler rating on the one hand and TDIU on the other. So the point is that there are these separate issues at play, these different tests and really different focuses. And I think that Mr. McIntyre, even here today, acknowledges that the disability was episodic and that it changed. And he's actually propounding a rule that was sort of a wooden rule, one that would preclude these kind of determinations when we have things like stage ratings in the veteran system where, just like Mr. McIntyre, he was 100% before 2000 on TDIU. From 2000 to 2007, he goes to 60%. And then 2007 to present, he's 100% TDIU. Do you think that the adjudication imposes any constraints on the doctor's assessment of the patient in the September 2002 examination? Such as, could the doctor say, I know he's been adjudicated 60%, but if I've ever seen a malingerer, this is it. This man has never been ill a day in his life. He could work for 40 more years. He's in perfect shape. I'm not aware of a limitation on the doctor. So that would be okay? Well, we have to sort of put things in buckets. What the doctor opines is one thing. What the VA adjudicator, at the RO level or the board level, does with that opinion is an entirely separate issue. I don't think there are any rules that would prohibit a doctor, private or hired by the VA, to provide a medical examination. So in reonal, the doctor provided an opinion, but you say, that's fine. The doctor can provide his opinion. It happened to have been based on the statements of the veteran. But the flaw was in the veteran's reliance on an opinion, which was predicated in part on facts that were contrary to the adjudicated factual determinations previously made. That's right. And it's for purposes of new and material evidence. Look again at reonal. That issue in reonal was new and material evidence. In the new and material evidence realm, that's, of course, an exception to one of the rules of finality. You present new and material evidence, you can actually reopen a claim. A veteran can reopen a claim. There is a presumption of credibility of the evidence. So when the veteran comes into the VA claims office and provides that packet of information, there's really a threshold determination. The RO, the regional office, will look at that information and say, is it new and material? They're not deciding it on the merits at that point. The only question is that threshold, should we reopen the claim? And under this rule, and I think it comes from the case of justice, JUS, TUS, Veterans Court's decision, there's a presumption of credibility. So what the RO, when looking at that evidence, is going to do is say, we're not going to make a credibility determination here generally. Now, the rule of reonal is actually a narrow exception to the rule of justice. And the rule of reonal basically says that if the RO has already rejected a fact, made a factual determination, that the presumption of credibility with respect to that medical opinion that relies on that erroneous fact does not exist. Let me see if I understand how broad you think the rule of, or the exception of reonal is. Suppose that the Philippine doctor, instead of relying entirely on the statements of the veteran, had found previous medical records that had not been previously submitted to the VA and were not known to the veteran, let's say, which established that there was not a pre-existing condition, which I think was the issue in reonal, if I have the facts. That's right, he fell out of a tree before service. Right, okay. But suppose that those records actually showed that this was an injury, that he did suffer in service. Would he nonetheless be bound by the previous adjudication? And by he, is the court referring to the doctors? I mean, would the veteran be bound? And would the doctor's report be subject to being disregarded? I think that presents a different situation. Of course. Because you actually have new... How would it get resolved? Well, because you actually have new information there. Again, reonal was based on all the veteran had provided was this sort of rejected story to the medical doctor. And the court in reonal says, and I think there was some prevarication there, but it was like mostly had relied on or significantly relied on that rejected story. If there's new information, new medical records, that medical examiner finds new medical records or say those same medical examiner records are appended with this examination report, that might be a different situation. And that would be potentially the presumption of credibility for purposes of new and material evidence would apply. And you would make it over that threshold, the veteran would make it over that threshold hurdle and at least get an adjudication on the merits of his new and material evidence. I think that presents a different situation than we have here. Is it your position that reonal is limited to evidence provided by the veteran? Well, if we look... Or does it extend to any evidence that turns out to be incorrect? Yeah, reonal arises in this context of new and material evidence. And new and material evidence is typically going to be evidence that the veteran comes in and I'm not aware of a situation where the VA would sort of sui sponte, I guess, have new and material evidence. They can make changes, but I don't think it's really under the rubric of new and material evidence. So new and material evidence, at least my understanding, is that that's something that would always have the veteran proffering evidence and saying, VA, please reopen my claim, my finally adjudicated claim based on this evidence. So I think it would be limited in that sense. I know that the VA can make changes based on changing conditions over time if the condition is not one that's permanent. But what are the parameters for the VA's revisiting previous determinations if, for example, it concludes that a previous adjudication in favor of the veteran was either wrong or unfavorable in terms of the rating? Sure, there are a couple of ways that it can be changed. Direct the court to 38 CFR 3.105, which really catalogs a number of different situations, clear and unmistakable error, re-ratings, revision of ratings. That's really sort of the regulatory hook, and the court can find in that regulation the various examples and then the procedures that go with those examples. Another source would potentially be something like a claim for increase, for example. The veteran can submit a claim for increase and the VA could, in response to that claim for increase, adjust the rating accordingly. So there are a couple of different situations. Actually, I would add one more. There is a fraud. I believe there's a fraud exception as well where the VA has been defrauded. I was aware of that. But even if it's just a case, for example, that the VA finds some records that indicate that the veteran's condition did not actually, he didn't actually incur the condition that led to his disability during service, but it was after service. Even if those records are later discovered by the VA, the VA can come in under 3.105, you say, and say, we're going to cancel your disability rating? Yes. Subject to procedures, a notice, and all kinds of procedures. And actually, I think this might have been alluded to earlier, there was an initial effort, actually, I think in the 2008 time period. The court looks at the board decisions. I think there was a board decision in 2008, or an RO decision, that actually proposed reducing Mr. McIntyre's rating on some of these facts that we've been talking about. I would just add one final point, and that is that, this is sort of picking up on the court's earlier question, that Mr. McIntyre is really trying to attack that medical opinion. He can't do it directly because that would be a factual issue and something that the court can't get at. So he's really trying to contort this rule of RIONAL into his set of circumstances. This is, we don't think, is supported by the law, either in this court or the Veterans Court. And it's actually contrary to his own statements in the joint motion for remand, Joint Appendix 139, where Mr. McIntyre actually talked about the very opinion he's now attacking and explained that that was highly probative and sound. So he's really trying to attack that, and we don't think there's any basis in the law for that attack. Well, why would it be? You don't think there's a basis in the law, which just simply means the law hasn't addressed this exact factual circumstance yet. But why would it be bad to take the rule of RIONAL and apply it to a case like this and say that it's not just the veterans that can't change and go back and re-argue the same facts, but the government can't either, because it's a bit of an equity situation here, as far as I'm concerned. I mean, RIONAL, you're happy with it. I hate to say it, but it was the contrary. It was against the veterans. But here, the government wants to be able to have a redo on whether he's 60% disabled. And I realize that you're not going to apply that to the 60% disability. You're going to keep getting it. But that's what the doctor did. Whether it affects the 60% or not, he did re-evaluate that in the context of the TDIU and reach a different conclusion. And Mr. Barney is correct that the board said, you know, we rely heavily, we find it highly probative.  So why not extend the rule of law? Why not in this case? I mean, this is a proclaimant system. Why not say, you know what? This medical opinion isn't okay. You can't predicate a decision on a medical opinion that re-does a decided fact, just like in RIONAL. And we just set a new rule of law that it takes RIONAL and applies it to these sets of facts, and then the veterans court gets a chance to re-evaluate it. Why not do that? What is the reason not to do that? Well, as stated, number one, that we don't think RIONAL would support that. But moving past that, number two, we think it's illogical in the sense that that would create a very strange situation for doctors, where doctors who are employed to provide their medical judgment. I see that my time has expired. Doctors are employed to provide their medical judgment, and essentially this would hamstring those doctors from opining and bringing that medical judgment to bear on the facts as presented in front of them. I don't think the court wants to ratify some kind of rule that would hamstring doctors in that way. So I would suggest that that would be a strong reason why the rule of RIONAL should not be extended in this case. And alternatively, or I guess additionally, for some of the reasons stated in 3.105, the fact of the matter is the VA can reduce benefits. The VA cannot appeal, and we fully recognize under 7252, the VA cannot appeal a decision from the board to the Veterans Court. But the VA can reduce benefits, and I think that in the appropriate case, it is something that we want to allow the secretary to have the tools, and if there's some rule of RIONAL that would preclude... What if, in this case, what had happened was that the board had adjudicated it all the way through about whether or not this particular head injury was the result of a fall from a tree as a child versus, you know, a fall out of a Jeep in combat, okay? And the board concluded, evidence is in equipoise. We find in favor of the veteran that the cause of his head injury was not the fall as a child out of a tree, but rather, you know, the fall out of a Jeep. And then they're turning to the TDIU, and the new doctor, for the first time, looks at it, and looks at it and says, given all of the scar tissue on this X-ray around it, it's clear to me that the fall had to have occurred far earlier in this man's life because of all the scar tissue. So basically, he is reaching a conclusion that's opposite of what the fact finding was, and he says, therefore, I don't find that he's entitled to TDIU, okay? That's what the doctor said. Does the rule of RIONA apply to that? Well, I think that the doctor's determination, there's a question about sort of service connection in a way. There's sort of two strands of the court's question. One is service connection. Was this something that was before service or during service? Is it service connected? And I think the court's hypothetical sort of makes that distinction. What's important is that the question is TDIU. That's a separate question. But the doctor says he's not TDIU, and part of the reason is because he concludes this injury is something he suffered early in life and has been living with all this time. So he's facing his non-TDIU conclusion on the predicate fact that the injury is something he suffered as a child as opposed to something more recent that was suffered in combat. So does the rule of RIONA apply to that set of circumstances? No, I don't think the rule of RIONA has anything to do with that set of circumstances. Again, RIONA has a limited function, and that was what is an exception to the presumption of credibility for purposes of new and material evidence. RIONA does not apply in that scenario, and I don't think that the court wants to adopt a rule, and we suggest it wouldn't be a good rule, whereby the doctor would be sort of forced, his hand would be forced, to make some kind of a determination. We want doctors to exercise their independent judgment, and anything that sort of hamstrings doctors or chills doctors from doing that, I think is a bad rule and might be good for Mr. Mikitarov in this case, but wouldn't be good for veterans as a whole. So you don't have any problem with the medical examiner being somewhat hamstrung when the veteran is asserting that evidence? Well, that's because, again, it's different. It's not based on the medical examiner's opinion. It's based on facts that have been basically rejected by the VA and then, in a sense, wandered through the medical examiner to provide a basis to say that this is new and material evidence for purposes of reopening. I think that's a materially different situation than we have in the court's hypothetical. If there are any further questions, we ask that the court affirm the decision of the Veterans Court. Thank you. Mr. Varney, you have 3 1⁄2 minutes. We went over with Mr. Honto, so if you need a little more time, don't worry about it. Thank you, Your Honor. I just want to address a few points. First, the VA's counsel has argued, as they did in their brief, that our interpretation of RIONA would tie physicians' hands and force them to abandon their independent judgment. We disagree with that. Physicians, just like any other expert in any field, are certainly capable of accepting a factual premise and then drawing conclusions based on that factual premise and litigation experts of all stripes are asked to do this day in and day out, physicians and engineers and scientists, economists and so forth. They don't always begin with a clean slate. Very often, facts are presented to them because they've already been adjudicated or because the parties have stipulated to a certain slate of facts. The expert takes those facts, then does what they can to draw opinions based on those facts. And there's no reason that a VA physician wouldn't be able to do that, particularly when we're talking, again, about TDIU, which is a question of whether a veteran can seek and maintain gainful employment based on a given set of disabilities. The second thing I want to address is counsel said several times that TDIU is a distinct inquiry and it's separate and distinct from the rating itself. We cited in our brief to Rice v. Shinseki on page 4 of our gray brief, which is 22 VET Act 447, where the VA itself has held that TDIU, whether expressly raised by a veteran or reasonably raised by the record, is not a separate claim for benefits, but rather involves an attempt to obtain an appropriate rating for a disability or disabilities. In other words, it's an attempt to argue for the fullest possible benefit based on a given claim. Now, let me explore with you for just a moment the implications of your first point. Are you saying that suppose that we have a veteran who has been adjudicated to be legally blind and the board sends it back to the RO for a determination, examination determination as to the extent of his employability. And the examining physician says, this man isn't legally blind. With some modest corrective measures, he can see fine. Does the doctor in that situation, is the doctor required to perform a sort of hypothetical determination saying, if I were to think that he were legally blind, then I would conclude that he is unemployable. Full stop. Is that what the doctor is required to do and say? First of all, I would point out that those are different than the facts we have here. I don't think they're all that different. But the answer to your question is, in that situation, the doctor should do what he's requested to do, which is base his opinion on the assumption, on the predicate fact that the veteran is blind. If the physician is observing something that's clearly incongruous with that, there is a procedure in place, counsel mentioned it today, for the VA to lower the veteran's rating. But that procedure is not for that doctor to simply find facts that are inconsistent with the adjudicated facts and then deny TDIU. The appropriate way to do it would be for the doctor to adjudicate the TDIU, I'm sorry, to evaluate TDIU according to the adjudicated fact, which is a finding of blindness. And then, for the VA, if the evidence is strong, to open a procedure, the appropriate procedure, to actually lower the rating. The problem here is that that procedure was not followed. And as counsel pointed out, it started to be followed, but the VA abandoned that effort. They abandoned it because there was a conclusion that Mr. Mkhitaryov's condition was not improving. And so the VA knows how to follow the procedure when it needs to. In this case, it did not. And my only other point that I wanted to make is, you know, in terms of how did the CAVC treat the Reano holding? You asked earlier whether the VA is trying to limit Reano to the facts of that case. And I think the answer is very clearly yes. If you read the CAVC's opinion, it very clearly based its Reano, the Reano portion of its decision, on the fact that in this case, there was no facts being provided by the veteran to the treating physician, which are the exact facts of Reano. But Reano has a much broader implication than that. Reano didn't turn on who was giving the facts to whom. It turned on the fact, as you mentioned, that there was an adjudication that those facts were incorrect. It was the adjudication itself that was the turning point in Reano. And I would say Reano really, if anything, it's not limited to only cases of clear material evidence, as counsel has pointed out. It's not limited to the factual scenario in Reano. It really is a, it turns on, essentially, res judicata. The fact that a party is bound by an adverse finding that is non-appealable. And unless there's further questions, I would... Thank you, Mr. Carney. Thank both counsels. The case is taken under advisement.